UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO.:

BETTY A. OWENS,

    Plaintiff,

vs.

FLAGLER HOSPTIAL, INC. d/b/a
Flagler Hospital & Medical Center,
FLAGLER PROFESSIONAL HEALTH
CARE SERVICES, INC. d/b/a Flagler Care
Center, and GEORGE P. JONES, IV, PA-C,

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Betty A. Owens sues Defendants Flagler Hospital, Inc. d/b/a Flagler Hospital & Medical Center, Flagler Professional Health Care Services, Inc. d/b/a Flagler Care Center, and George P. Jones, IV, PA-C, and allege:

## INTRODUCTION

1. Plaintiff Betty A. Owens is the victim of medical malpractice, who suffered a catastrophic cardioembolic stroke as a result of Defendants' alleged medical negligence. She is presently a Plaintiff in a medical malpractice arbitration proceeding pursuant to Chapter 766, Florida Statutes, *Owens v. Flagler Professional Health Care Services, Inc. d/b/a Flagler Care Center*, *et al.*, Case No. 20-002120MA, State of Florida, Division of Administrative Hearings (the "Arbitration").

2. Defendant Flagler Hospital, Inc. d/b/a Flagler Hospital & Medical Center ("Flagler") is a Florida corporation that owns and operates an urgent care clinic in St. Augustine, Florida, where Mrs. Owens was negligently treated ("Flagler Clinic").

3. Defendant Flagler Professional Health Care Services, Inc. d/b/a Flagler Care Center ("Flagler Professional") is a Florida corporation and subsidiary of Flagler, also working to operate the clinic in St. Augustine.

4. Defendant George P. Jones, IV, PA-C is a physician's assistant who rendered care to Mrs. Owens at Flagler Clinic (together with Flagler and Flagler Professional, the "Flagler Defendants"). At the time, he was working as an employee of Flagler at Flagler Clinic.

5. Pursuant to the Florida medical malpractice arbitration law, section 766.207, Florida Statutes, the Flagler Defendants agreed not to contest liability and to arbitrate Mrs. Owens's damages arising from the alleged medical malpractice. Accordingly, liability is not at issue in the Arbitration. Only the amount of the damages to which Mrs. Owens is entitled is contested.

6. Since her injury in October 2019, the Centers for Medicare Services ("CMS") has paid for much of Mrs. Owens's care through its Medicare healthcare program. CMS is the federal agency that administers this program.

7. Plaintiff has filed this action because she is in doubt as to her legal rights and obligations under federal law and the Florida and federal constitutions. In short, Plaintiff requires clarification on the federal law that applies and whether that law preempts or prohibits Defendants' interpretation of the Florida statutes governing the award of medical malpractice arbitration damages.

8. Specifically, the Flagler Defendants claim that notwithstanding federal law entitling CMS to reimbursement for the cost of Medicare benefits paid on behalf of Mrs. Owens,

she may not recover in the arbitration proceeding damages for the amount of those benefits. Plaintiff argues that these damages must be recovered so that Mrs. Owens may comply with these rights to reimbursement under federal law and plan for future reimbursement.  The Flagler Defendants acknowledge the government's lien rights but claims that Mrs. Owens is not entitled to recover the monies she owes, nor will Defendants agree to indemnify Mrs. Owens or her attorneys from the enforcement of any liens.

## JURISDICTION AND VENUE

9. This is an action for declaratory judgment brought pursuant to Chapter 28, U.S.C. § 2201 and Federal Rule of Civil Procedure 57.  The court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 2201 (Declaratory Judgment Act).  As alleged below, an actual case or controversy concerning federal law and Mrs. Owens's rights under the United States Constitution has arisen between the parties, which threatens injury to Plaintiff by depriving Mrs. Owens of the damages to which she is entitled and yet still rendering Plaintiff liable for the reimbursement of conditional payments made by government programs.  Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mrs. Owens's claims that form part of the same case or controversy.

10. Pursuant to 28 U.S.C. § 1391, venue is proper in the Middle District of Florida, where a substantial part of the events giving rise to the claim for declaratory relief occurred.

11. This Court has personal jurisdiction over the Flagler Defendants because they conducts business in this District.

## FACTS GIVING RISE TO COMPLAINT

A. **Mrs. Owens's Injuries and Damages.**

12. On October 16, 2019, Mrs. Owens went to Flagler Clinic, owned and operated by Defendants Flagler and Flagler Professional, for symptoms relating to a vaginal yeast infection.

Defendant Jones, a physician's assistant at Flagler Clinic, negligently ordered that her anticoagulation medication be discontinued, notwithstanding her history of atrial fibrillation. Accordingly, Mrs. Owens went without her medication for days and, as a result, suffered catastrophic cardioembolic stroke at her home on October 20.

13.   Mrs. Owens was airlifted to the Mayo Clinic in Jacksonville for emergent stroke treatment.  Subsequently, she was discharged to a rehabilitation center, where she remained until January 2020.  Then, she was discharged to the care of home health aides.

14.   As a result of her stroke, Mrs. Owens suffered permanent physical and mental injuries.  She is left largely unable to speak, hemiplegic, and bowel and bladder incontinent.  As a result of her right-side weakness, she is unable to walk or use her right arm.  Whereas Mrs. Owens was fully functional and living on her own before her injury, she is now dependent upon home health aides and her daughter for activities of daily living and requires constant, 24 hour a day care.

15.   Given her condition, Mrs. Owens will require significant nursing services and the assistance of certain medical equipment for the remainder of her life.

16.   Since the date of her stroke in October 2019, Mrs. Owens's health care providers have billed Medicare for the cost of her extensive medical care and Medicare has made conditional payments to these providers.

    B.  **The Medical Malpractice Arbitration.**

17.   The Arbitration is proceeding pursuant to section 766.207, Florida Statutes, the statute authorizing medical negligence arbitration proceedings as an alternative to traditional civil tort actions.  In arbitration, liability is admitted, and only damages are arbitrated, but the claimant's non-economic damages are capped by statute at $250,000 per incident.  Fla. Stat. 766.207(7).

18. By way of background, Section 766.106, Florida Statutes, requires medical malpractice claimants to give prospective defendants pre-suit notice of a lawsuit and gives these prospective defendants the opportunity to investigate the claim over a period of three months. After that time, claimants or prospective defendants may elect to have damages determined by an arbitration panel by serving a request for voluntary binding arbitration of damages.

19. When a prospective defendant agrees to arbitration, it chooses to admit liability. As explained by the court in *Estrada v. Mercy Hospital, Inc.*, 121 So. 3d 51, 53-54 (Fla. 3d DCA 2013): "[I]n a proceeding for voluntary binding arbitration of a medical negligence claim, the liability of the defendants is admitted, and the only issue is damages, which are set by a panel of three arbitrators, one selected by the claimant, one selected by the defendant, and an administrative law judge designated by the Division of Administrative Hearings who serves as the chief arbitrator."

20. In this case, the presuit investigatory period expired and on April 2, 2020, Plaintiff's counsel sent a Request for Voluntary Binding Arbitration of Damages to Flagler, pursuant to section 766.207, Florida Statutes. The Flagler Defendants accepted this offer to arbitrate on April 30 and agreed to submit the matter to arbitration on May 4.

21. On May 5, 2020, the arbitration was initiated with the filing of a stipulated Request for Arbitration.

22. In the Arbitration, Plaintiff seeks to recover from the Flagler Defendants her non-economic damages, which are capped pursuant to section 766.207(7), and the cost of her past and future medical care and other economic damages, including the cost of the care paid for by Medicare.

23. Defendants' counsel has made clear to Plaintiff's counsel that it will demand that Medicare benefits paid on Mrs. Owens's behalf and to be paid in the future be set off from the awarded damages in the Arbitration.

24. The arbitration proceeding is scheduled to take place during the period September 30 through October 1, 2020.

C. **The Liens for Medical Care and Expectation of Future Care**

25. Through the Medicare program, CMS has made conditional payments for medical services on behalf of Mrs. Owens to the facilities where she was treated and to her medical providers.

26. So, although Flagler's negligence caused Mrs. Owens's injury, Mrs. Owens's medical care has been paid for by the American taxpayer.

27. CMS has a right to reimbursement for those payments under federal law, which it has already advised Mrs. Owens. Specifically, Plaintiff was advised that CMS will demand reimbursement for the costs of medical treatment rendered to Mrs. Owens and paid for by Medicare, which through December total $80,436.44. CMS advised that "conditional payments" would be "subject to reimbursement . . . from proceeds . . pursuant to any settlement, judgment, award, or other payment," which would include an award in the Arbitration.

28. Further, at present, Medicare continues to make conditional payments for Mrs. Owens's care.

D. **The Parties Dispute Whether Federal Law Preempts and Prohibits an Offset for Medicare benefits from Mrs. Owens's Damages.**

29. The parties dispute whether the Medicare benefits that Mrs. Owens has received and may receive in the future can be deemed a "collateral source" and set-off from Mrs. Owens's economic damages award in arbitration, or whether federal law prohibits such treatment.

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

30. Defendants contend that whatever economic damages Mrs. Owens has sustained must be reduced by the Medicare payments already made and those that may be paid in the future for Mrs. Owens's care. Plaintiff contends this interpretation is prohibited by federal law, extending to the federal government a right of reimbursement and designating the Medicare program as the secondary payor of expenses for tort victims.

31. Defendants' position relies on sections 766.207(7)(a) and (c), Florida Statutes, and the definition of "collateral source" set forth in section 766.202(2)(a) (together the "Offset Provisions"). Section 766.207 contains "offset" language providing that "past and future medical expenses" shall be awardable "offset by any collateral source payments," and that "[d]amages for future economic losses . . . shall be offset by future collateral source payments." Fla. Stat. § 766.207(7)(a), (c).

32. "Collateral sources," for purposes of section 766.207 is defined to include "federal . . . public programs providing medical expenses," but to specifically exclude payments that are "prohibited" from being offset from damages under "federal law."

1. In fact, Section 766.202 defines "collateral sources" as follows:

(2) "Collateral sources" means any payments made to the claimant, or made on his or her behalf, by or pursuant to:

(a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, **except as prohibited by federal law**.

(emphasis added).

33. The Medicare benefits that Mrs. Owens may receive cannot be deemed a "collateral source" under this definition because federal law prohibits such treatment.

34. Indeed, under federal law governing the Medicare program, the federal government has a right to recover medical expenses incurred from the medical care of a Medicare beneficiary

directly from the beneficiary, from the proceeds for any recovery the beneficiary makes, and from the beneficiary's attorneys. *See* 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

35. The purpose of the federal Medicare law, the Medicare Secondary Payor Act ("MSP"), is to make Medicare benefits secondary to benefits payable by a third-party payer and to ensure that the cost of treating injured persons, like Mrs. Owens, to whom CMS makes care available, is born by those legally responsible for the injury, not the United States taxpayer. *See* 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

36. Thus, federal law requiring reimbursement for Medicare expenses preempts the Florida Statutes, which would excuse the tortfeasor from payment.

### E. The Impact of the Offset to Which Flagler Contends it is Entitled.

37. In the arbitration, Plaintiff seeks to recover from Defendants Mrs. Owens's non-economic damages, which are capped pursuant to section 766.207(7), and the cost of Mrs. Owens's past and future medical expenses so that Mrs. Owens can reimburse CMS for the Medicare payments on her behalf and have funds set aside to cover the costs of her future care.

38. Because Mrs. Owens's care since October 20, 2019, has been paid for almost entirely by Medicare, Flagler has confirmed that it will seek a reduction of Mrs. Owens's damages, or an "offset," for almost the entirety of the costs associated with Mrs. Owens's past medical care. In addition, Defendants seek to off-set some portion of her future anticipated care, arguing that Medicare will cover these expenses.

39. Furthermore, Defendants have confirmed that it will not agree to indemnify Mrs. Owens or her lawyers, The Law Office of William J. Scott, P.A. ("Scott P.A.") and Terrell Hogan, against the enforcement of any liens for payments associated with Medicare care.

40. Accordingly, if Medicare benefits are offset from whatever damages Mrs. Owens is awarded, as Defendants insist, Mrs. Owens will be left in an impossible situation:

41. First, as to the past benefits received, Mrs. Owens will have insufficient funds with which to repay the government program and Defendants will escape responsibility for the damages they caused.

42. Second, if Mrs. Owens is not awarded future economic damages because Medicare benefits are deemed "collateral sources" under the Offset Provisions, then Mrs. Owens will be without sufficient funds to pay for her future care, even if Medicare will not cover her expenses into the future.

43. Because long-term care is not covered by Medicare, this program will not pay for the long-term, 24-hour care that Mrs. Owens requires. Also, Medicare will not pay for future hospitalization and other expenses relating to Mrs. Owens's October 2019 injury if a primary payer of these expenses is identified. Flagler will be identified to Medicare as such a primary payer as a result of the arbitration proceeding given that a damages award or settlement in the arbitration proceeding must be reported to Medicare. 42 U.S.C. 1395y(b)(8)(A), (B) (requiring insurers to report to CMS any Medicare beneficiaries who receive a "settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability). Accordingly, Medicare may refuse to pay for any of Mrs. Owens's future medical expenses relating to her injury.

44. And, Finally, if Mrs. Owens is denied recovery of costs of the Medicare services, the government will not receive the reimbursement from Mrs. Owens to which it is entitled and will instead bear the entirety of the economic burden for Defendants' negligence. Thus, the American taxpayer will ultimately be responsible for paying for Mrs. Owens's care, rather than Flagler.

45. In fact, Flagler has already rendered Medicare the primary payer of Mrs. Owens's medical expenses because Mrs. Owens's providers have already billed and been paid by Medicare.

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

46. This is the not the scheme provided for by federal law and it is also unconstitutional, as alleged below. The offset subverts the reimbursement rights provided under federal law and deprives Mrs. Owens of the full extent of her economic damages which would otherwise be recoverable in a civil suit. The offset also arbitrarily discriminates against Mrs. Owens.

47. The Offset Provisions also leave Mrs. Owens's lawyers, Scott P.A. and Terrell Hogan, liable for the repayment of conditional payments made by CMS. *See* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment."); *Zinman v. Shalala,* 67 F.3d 841, 844-45 (9th Cir. 1995). Therefore, Mrs. Owens's attorneys too have an obligation to ensure that Medicare is reimbursed.

48. Notwithstanding all of this, the Flagler Defendants dispute that federal law prohibits an offset for Medicare benefits and claims that it is entitled to one in this case.

## COUNT I

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT FEDERAL LAW PREEMPTS OR PRHOBITS MEDICARE BENEFITS FROM BEING OFFSET FROM MRS. OWENS'S ECONOMIC DAMAGES

49. Plaintiff incorporates and realleges the allegations above and further allege:

50. There is an actual controversy between Plaintiff and the Flagler Defendants regarding the application of federal law and Plaintiff is in doubt as to Mrs. Owens's ability to recover the full extent of her damages, including those damages claimed arising from medical care paid for by Medicare in the past or future.

51. The MSP creates a cause of action by which the United States may recover "from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii). This law allows the United States to seek reimbursement from the beneficiary herself, from the proceeds for any recovery the beneficiary

makes, and from the beneficiary's attorneys. S*ee also* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment.").

52. Given these rights to reimbursement, Medicare benefits cannot be a collateral source under the Offset Provisions, as defined above, because such an application would subvert CMS's right to reimbursement from its beneficiary, Mrs. Owens, and thus be "prohibited by federal law."

53. Defendants disagree and assert that it is entitled to an offset against the awardable damages for the cost of the medical care paid for by Medicare and that may be paid for by this program in the future.

54. Because of this actual, present, and justiciable controversy, Mrs. Owens stands to be deprived of the damages to which she is entitled. Also, Mrs. Owens's attorneys, Scott P.A. and Terrell Hogan, will also be liable for reimbursement of conditional payments made on Mrs. Owens's behalf. See 42 U.S.C. § 1395y(b)(2)(B)(iii).

55. Because of the uncertainty with respect to their rights, the Plaintiff cannot make any intelligent determination as to how to proceed with arbitrating her claim, presenting her damages, and making provision for reimbursing Medicare.

56. Accordingly, Plaintiff requests that this Court declare federal law preempts and prohibits Medicare benefits from being offset from Mrs. Owens's economic damages as a collateral source payment.

## COUNT II

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITTION

57. Plaintiff incorporates and realleges the allegations above and additionally or alternatively alleges that:

58. The Offset Provisions provide that once a medical malpractice defendant has offered to arbitrate, the Mrs. Owens's economic damages shall be "offset" by "collateral source payments," including "federal . . . public programs providing medical expenses," but specifically excluding payments that are "prohibited" from being offset from damages under "federal law."

59. If Medicare benefits are considered collateral sources in arbitration, for Mrs. Owens, who has been entitled to Medicare benefits, these Offset Provisions will entitle the Flagler Defendants to an offset for the total care paid for by Medicare to Mrs. Owens and that this program will pay on Mrs. Owens's behalf in the future. This will leave Mrs. Owens without the ability to recover costs to repay the government or to recover compensation for future economic losses, rendering her unable to obtain the medical care of her choosing and a burden on the taxpayer for the remainder of her life.

60. In this manner, the Offset Provisions arbitrarily place Mrs. Owens in a position different from that of a civil litigant, who has received medical care paid for by Medicare, and deprive Mrs. Owens of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution. Under the Offset Provisions, Mrs. Owens is not treated like other medical malpractice claimants who would be entitled to the full extent of their damages.

61. Accordingly, Plaintiffs request that this court declare that the Offset Provisions are unconstitutional and that Mrs. Owens's Medicare benefits cannot be offset from Mrs. Owens's economic damages as a collateral source payment.

## COUNT III

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITTION

62. Plaintiff incorporates and realleges the allegations above and alleges additionally or in the alternative:

63. If Medicare benefits are considered collateral sources in arbitration, for Mrs. Owens, who has been entitled to Medicare benefits, these Offset Provisions will entitle the Flagler Defendants to an offset for the total care paid for by Medicare to Mrs. Owens and that this program will pay on Mrs. Owens's behalf in the future. This will leave Mrs. Owens without the ability to recover costs to repay the government or to recover compensation for future economic losses, rendering her unable to obtain the medical care of her choosing and a burden on the taxpayer for the remainder of her life.

64. In this manner, the Offset Provisions deprive Mrs. Owens of due process of law in violation of Amendment XIV, Section 1 of the United States Constitution.

65. Accordingly, Plaintiffs request that this court declare that the Offset Provisions are unconstitutional and that Mrs. Owens's Medicare benefits cannot be offset from Mrs. Owens's economic damages as a collateral source payment.

## COUNT IV

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FLORIDA CONSTITTION

66. Plaintiff incorporates and realleges the allegations above and alleges additionally or alternatively:

67. If Medicare benefits are considered collateral sources in arbitration, for Mrs. Owens, who has been entitled to Medicare benefits, these Offset Provisions will entitle the Flagler

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

Defendants to an offset for the total care paid for by Medicare to Mrs. Owens and that this program will pay on Mrs. Owens's behalf in the future. This will leave Mrs. Owens without the ability to recover costs to repay the government or to recover compensation for future economic losses, rendering her unable to obtain the medical care of her choosing and a burden on the taxpayer for the remainder of her life.

68. In this manner, the Offset Provisions arbitrarily place Mrs. Owens in a position different from that of a civil litigant, who has received medical care paid for by Medicare, and deprive Mrs. Owens of equal protection under the law, in violation of Article I, Section 2 of the Florida Constitution, guaranteeing that all similarly situated persons be treated alike. Under the Offset Provisions, Mrs. Owens is not treated like other medical malpractice claimants who would be entitled to the full extent of their damages.

69. Accordingly, Plaintiff requests that this court declare that the Offset Provisions are unconstitutional and that Mrs. Owens's Medicare benefits cannot be offset from Mrs. Owens's economic damages as a collateral source payment.

## COUNT V

**PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE FLORIDA CONSTITTION**

70. Plaintiff incorporates and realleges the allegations above and alleges additionally or alternatively:

71. If Medicare benefits are considered collateral sources in arbitration, for Mrs. Owens, who has been entitled to Medicare benefits, these Offset Provisions will entitle the Flagler Defendants to an offset for the total care paid for by Medicare to Mrs. Owens and that this program will pay on Mrs. Owens's behalf in the future. This will leave Mrs. Owens without the ability to recover costs to repay the government or to recover compensation for future economic losses,

rendering her unable to obtain the medical care of her choosing and a burden on the taxpayer for the remainder of her life.

72. In this manner, the Offset Provisions deprive Mrs. Owens of due process of law in violation of Article I, Section 9 of the Florida Constitution.

73. Accordingly, Mrs. Owens requests that this court declare that the Offset Provisions are unconstitutional and that Mrs. Owens's Medicare benefits cannot be offset from Mrs. Owens's economic damages as a collateral source payment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that a judgment be entered declaring that,

(1) Medicare benefits may not be offset from the economic damages awarded to Mrs. Owens as a collateral source payment because such an offset would be preempted or prohibited by federal law;

(2) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mrs. Owens because they deprive her of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(3) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mrs. Owens because they deprive her of due process of law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(4) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mrs. Owens because they deprive her of equal protection under the law, in violation of Article I, Section 2 of the Florida Constitution; and

(5) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mrs. Owens because they deprive her of due process of law, in violation of Article I, Section 9 of the United States Constitution.

Respectfully submitted,

**GROSSMAN ROTH YAFFA COHEN, P.A.**
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, Florida 33134
Telephone:	305-442-8666
Facsimile:	305-285-1668

By:	*/s/ Rachel W. Furst*
**RACHEL W. FURST, ESQ.**
Fla. Bar. No. 45155
rwf@grossmanroth.com
**NEAL A. ROTH, ESQ.**
Fla. Bar No. 220876
nar@grossmanroth.com

**TERRELL HOGAN**
233 East Bay Street, Suite 804
Jacksonville, Florida 32202-3451
Phone: (904) 632-2424
Fax: (904) 632-2027
**MATTHEW W. SOWELL, ESQ.**
Fla. Bar No.: 725757
sowell@terrellhogan.com
**FADI M. CHAKOUR, M.D., J.D.**
Fla. Bar No.: 94636
chakour@terrellhogan.com

**THE LAW OFFICE OF WILLIAM J. SCOTT, P.A**.
2716 Herschel Street
Jacksonville, FL 32205
Phone: 904-398-9995
**WILLIAM J. SCOTT, ESQ.**
Fla. Bar. No: 604010
WJScott@WJScottLaw.com

*Attorneys for Plaintiff*